## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARLON ACOSTA, on behalf of himself and other persons similarly situated,<br><br>    Plaintiff,<br><br>V.<br><br>HIPNATION OPERATIONS & SOLUTIONS LLC, and ACCESSAMERICA GROUP, LLC | CIVIL ACTION<br><br>NO. 19-9315-WBV-DMD<br><br>SECTION D(3) |

## OPPOSITION TO CLASS CERTIFICATION

In this Telephone Consumer Protection Act ("TCPA") case, plaintiff Marlon Acosta ("Acosta") has suggested no means of proving, by common evidence or otherwise, that his receipt of a single text message is appropriate for class certification.

That failing defeats Acosta's class certification motion. The Fifth Circuit's controlling decision on putative TCPA class actions--which Acosta studiously ignores--explains why:

> [T]he determinative question of whether consent can be established via class-wide proof must ... be answered in the negative. [Plaintiff] has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [defendant] may be liable under the TCPA. ... This prevents the purported class from having the required cohesiveness and defeats the predominance requirement.

*Gene & Gene, LLC v. Biopay, LLC*, 541 F.3d 318, 329 (5th Cir. 2008).

In this case, Acosta's inability to prove any requirements of Rule 23 is abundantly clear and is further discussed below.

## CLASS CERTIFICATION STANDARDS

"To obtain class certification, a party must satisfy Rule 23(a)'s four threshold requirements (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of Rule 23(b)(1), (2), or (3)." *Gene & Gene*, 541 F.3d at 325 (citation omitted). Rule 23(b)(3) imposes two additional requirements: (1) that questions of law or fact common to class members predominate over any questions affecting only individual members ("predominance"); and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). *Id.* at 325-26. "[I]t is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met. *Id.* at 325 (citation omitted).

Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. *Wal-Mart Stores, Inc. v. Dukes*, 2011 WL 2437013, at *7 (2011). The moving party must also propose an appropriate class definition that makes it "administratively feasible for the court to determine whether an individual is a member." *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D. Cal. 1977); see also, *John v. Nat'l Security Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons ... is an implied prerequisite of Federal Rule of Civil Procedure 23."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertain-able."). "[C]ertification is proper only if 'the trial court is satisfied, after

a rigorous analysis, that the prerequisites of Rule 23(a) [and (b)(3)] have been satisfied." *Dukes*, 2011 WL 2437013, at *7 (citations omitted); *accord Gene & Gene*, 541 F.3d at 326; *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996). Frequently that 'rigorous analysis' will involve some overlap with the merits of the plaintiff's claim. That cannot be helped. "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 2011 WL 2437013, at *7. Determining whether legal issues common to the class predominate over individual issues requires that the court inquire how the case will be tried. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class. Although this inquiry does not resolve the case on its merits, it requires that the court look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (citations omitted).

Here, Acosta's motion provides no evidence whatsoever in support of his class allegations. None. As the party seeking certification, the burden to show that all of the requirements for class certification have been met rests on the plaintiff. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). Further, Rule 23 requires the Court to find, not merely assume, the facts favoring class certification. See *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2nd Cir. 2006).

## RULE 23's REQUIREMENTS ARE NOT SATISFIED HERE

### A) Numerosity is Not Satisfied

The decision of whether to certify a class lies soundly within the district court's discretion; however, the court must conduct "a rigorous analysis" of the Rule 23 prerequisites before certifying a class. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Further, Rule 23 requires the Court to find, not merely assume, the facts favoring class certification. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). Specifically, in deciding a motion for class certification under Rule 23, "the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Public Offerings Securities Litigation*, 471 F.3d at 41. A "mere allegation that the class is too numerous to make joinder practicable" is insufficient. *Fleming v. Travenol Labs, Inc.*, 707 F.2d 829, 833 (5th Cir. 1983).

Here, the Plaintiff has merely recited line and verse the requirements of Rule 23 and cited the allegations in his Complaint ***without providing any evidence*** in support of these allegations, and in particular, without providing any evidence of numerosity. Therefore, on this basis alone, Plaintiff's Motion should be denied.

### B) Commonality, Predominance and Superiority Are Not Satisfied

#### 1. Commonality Has Not Been Demonstrated

Though Rule 23(b)(3)'s predominance criterion "is far more demanding" than Rule 23(a)(2)'s commonality requirement, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997), the Supreme Court's recent decision in *Dukes*, 2011 WL 2437013, at *6-11 shows that commonality is not so easily met as Acosta urges. Acosta claims he has

satisfied the commonality requirement merely by listing two questions that he claims are common to the class. But *Dukes* teaches otherwise. Noting that Rule 23(a)(2)'s language is "easy to misread," the Supreme Court explained that its commonality criterion is *not* satisfied simply by framing "questions" supposedly common to the class, as Acosta has done.

> "Any competently crafted class complaint literally raises common 'questions.'" For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification.

*Dukes*, 2011 WL 2437013, at *7 (citation omitted).

Instead, *Dukes* holds, to satisfy Rule 23(a)(2), the class' claim(s) "must depend upon a common contention" which "must be of such a nature that it is capable of class-wide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification ... is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)). Acosta's proposed "common questions" fail the commonality test as explicated in *Dukes*. *Dukes* states that reciting questions like "What remedies should we get?" "is not sufficient to obtain class certification." *Dukes*, 2011 WL 2437013, at *7. Acosta's two supposed common questions are of exactly this type: Were text messages sent using an ATDS? Was there prior express written consent?

Acosta's supposedly common questions fail to satisfy Rule 23(a)(2) because they are not "the common contention" on which the class claim depends and proving them true or false will *not* resolve an issue that is central to the validity of the class' claim. Nor are they not capable of classwide resolution by proof common to the putative class as a whole.

> [T]he determinative question of whether consent can be established via class-wide proof must ... be answered in the negative. [Plaintiff] has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [defendant] may be liable under the TCPA. ... This prevents the purported class from having the required cohesiveness and defeats the predominance requirement.

*Gene & Gene*, 541 F.3d at 329.

Acosta explicitly includes the individual issue of consent in his second purportedly common question. One cannot determine whether Defendant's conduct was knowing or willful within the TCPA's meaning without proof of what information Defendant had regarding whether a particular class member had consented or withdrawn consent to being called on his or her cell phone. That proof will necessarily be as individual as the question of consent itself.

**Acosta's burden of proving consent**

Acosta's claim is for violation of the TCPA's ban on auto-dialed calls to cell phones. There is a crucial exception to that ban, however. It does not apply to calls "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The Federal Communications Commission has issued a binding Declaratory Ruling clarifying that consumers give "express consent" any time they provide their cell phone number in their credit application papers. FCC Declaratory Ruling, FCC 07-232 at ¶¶ 9-10 (Dec. 28, 2007). Specifically, the ruling states that express consent occurs "if the wireless number was provided by the consumer to the creditor, and that such number was provided during

the transaction that resulted in the debt owed." *Id.* at ¶ 10. The FCC also cited, with approval, the language from its 1992 Order for the broader proposition that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* at ¶ 9. Of course, consent can be demonstrated in other ways as well. One Court of Appeal has held that express consent is demonstrated any time consent "is clearly and unmistakably stated" by the customer. *Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 956 (9th Cir. 2009). Hence, there is no requirement, for instance, that consent be provided in writing as opposed to orally.

As "consent" can be demonstrated in a variety of ways, it cannot be ascertained absent an individual inquiry of each class member's account and the circumstances surrounding each call or contact. For instance, as explained above, if a customer provided the cell number at the time of application, consent is readily presumed. FCC Declaratory Ruling, FCC 07-232 at ¶¶ 9-10. Yet even this seemingly more straightforward showing requires a file-by-file review of the actual contract origination documents to ascertain whether the dialed number was provided at the time of application. And, consent given at the time the account was opened is just one means a customer can provide consent. A customer may have provided his cell phone number after the account was opened in a number of ways that would also evidence consent. For instance, a customer can provide a cell number in a phone conversation with a customer service agent, via an e-mail, or via interface with a website. Moreover, even if the number was not obtained from the customer directly (for example, it was obtained through a spouse) that customer still may have provided consent to be contacted via cellular telephone in later contacts with Defendant's

agents. To establish both the source of the number and consent, each individual account file would need to be reviewed, and testimony from the customer may even be needed to determine whether consent was given.

Moreover, even if consent was provided, it may have been withdrawn by the customer after-the-fact, adding yet another layer of individualized inquiry. Fundamentally, therefore, a mini-trial will be necessary on the merits of each class member's case. For each class member, the trier of fact must consider the circumstances surrounding how the cell phone number was obtained, and any ancillary evidence of consent or withdrawal of consent existing after the number was obtained, to determine, as a matter of fact, whether or not there was express consent to place each particular call. In many cases--plaintiff's included--whether consent was given may be a contested issue. This consent showing is crucial to the merits of the case: "Whether established by [Defendant] as an affirmative defense or by [Plaintiff] as an element of the cause of action, the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits..." *Gene & Gene*, 541 F.3d at 327. Without a way to systematically demonstrate that consent was or was not given, individual issues necessarily predominate over common issues. *Id.* It is for this very reason that *Gene & Gene* counseled against certifying a class in the TCPA context. *Gene & Gene*, 541 F.3d at 328.

The evidence to show what Defendant knew about Acosta's (or any other consumer's) consent or lack of consent is inherently individual to him. Whether Defendant violated the TCPA knowingly or willfully may be framed as a common "question" but it is not one that can "generate common answers apt to drive the resolution of the litigation,"

and so it fails to satisfy Rule 23(a)(2)'s commonality requirement. *Dukes*, 2011 WL 2437013, at *7.

### 2. Predominance Is Even More Clearly Absent

Where commonality cannot be shown, predominance is even more certainly missing since, as noted, predominance is "far more demanding" than commonality, *Amchem Prods., Inc*, 521 U.S. at 623-24.

Here, Acosta alleges that common issues predominate because Defendant supposedly engaged in a common course of conduct with standardized procedures. Yet, Acosta has introduced no evidence to show what this course of conduct was or what procedures were in place. For all this Court knows, any potential violations could very well be an exception to the rule, not any common course of conduct or standardized procedure. Additionally, a defendant's common course of conduct or standardized procedures, alone, do not satisfy the predominance requirement. See *Gene & Gene*, 541 F.3d at 326. Common conduct does not establish class-wide liability here because the exact same conduct--auto-dialing a cell phone number--may be perfectly legal in some instances (when the consumer has given prior express consent) and not in others (when no consent was given or consent has been withdrawn). For this reason, in a TCPA case, "the predominant issue of fact is undoubtedly one of *individual* consent." *Gene & Gene*, 541 F.3d at 327. Consequently, to satisfy Rule 23(b)(3) in a TCPA case, the plaintiff must show how he or she can prove consent (or lack of consent) with common, class-wide proof.

> [P]laintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and ... district courts must only certify class actions filed under the TCPA when such a theory has been advanced.

*Id.* at 328.

Acosta has not advanced any theory--let alone a viable one--for proving that class members did not consent to Defendant's actions.

> [T]he determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative [Plaintiff] has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [defendant] may be liable under the TCPA. ... This prevents the purported class from having the required cohesiveness and defeats the predominance requirement.

*Id.* at 329.

As Acosta cannot show how consent or lack of consent can be proven by common evidence, that individual issue predominates and precludes class certification under Rule 23(b)(3). *Id.*

### 3.  Superiority Is Lacking As Well

Acosta fails to satisfy Rule 23(b)(3)'s superiority criterion for the same reason he cannot establish predominance. "[T]he predominance of individual issues relating to the plaintiffs' claims ... detracts from the superiority of the class action device in resolving these claims." *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 604-05 (5th Cir. 2006) (*citing Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998) and *Castano*, 84 F.3d at 745); *see also In re Wilborn*, 609 F.3d 748, 755-56 (5th Cir. 2010).

> The focus of this analysis [of superiority] is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." As a result, the predominance analysis has a "tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims," both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability.

The converse is also true: the less common the issues, the less desirable a class action will be as a vehicle for resolving them.

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (citations omitted).

Moreover, it has been squarely held that "*a class action suit is not a superior means of adjudicating a TCPA suit.*" *Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.*, 23 A.3d. 469, 2011 WL2793214, *6 (N.J.Super.A.D. 2011) (emphasis added). The *Local Baking Products* court did not arrive at this sweeping conclusion lightly. It first conducted a survey of class certification decisions nationwide. *Id.* at *3-5. At the conclusion of that work, it determined "by imposing a statutory award of $500, a sum considerably in excess of any real or sustained damages, Congress has presented an aggrieved party with an incentive to act in his or her own interest without the necessity of class relief." *Id.* at *6. The Court then aligned itself with numerous others across the country finding that common facts cannot predominate: "Ultimately, we note that the same facts required to prevail on an individual TCPA claim... are identical to the facts that would have to be proven to merely identify a single class member." *Id.* For both reasons, the Court held superiority could not be shown in the TCPA context. *Id.*

Acosta's case is no different. He cannot demonstrate his class action is the "superior" method of resolving each class member's highly individualized alleged claims. Hence, the motion must be denied.

### C) The Proposed Class May Not Be Certified Under Rule 23(b)(2)

In *Dukes*, the Supreme Court said Rule 23(b)(2) could reasonably be read to apply "only to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all." *Dukes*, 2011 WL 2437013, at *12. However, it

chose to resolve *Dukes* on the narrower ground that "at a minimum, claims for

individualized relief (like the backpay at issue here) do not satisfy the Rule [23(b)(2)]." *Id.*

> As the high court further explained:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment
> would provide relief to each member of the class. It does not authorize class
> certification when each individual class member would be entitled to a
> different injunction or declaratory judgment against the defendant.
> Similarly, it does not authorize class certification when each class member
> would be entitled to an individualized award of monetary damages.

*Id.*

> A class seeking individualized monetary relief may not be certified Rule
23(b)(2) even if the class "predominately" seeks injunctive or declaratory relief.

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing
> to justify elimination of Rule 23(b)(3)'s procedural protections: It neither
> establishes the superiority of class adjudication over individual adjudication
> nor cures the notice and opt-out problems. We fail to see why the Rule
> should be read to nullify these protections whenever a plaintiff class, at its
> option, combines its monetary claims with a request--even a
> "predominating request"--for an injunction.

*Id.* at *14.

> Finally, without endorsing the Fifth Circuit's *Allison* test, the Supreme Court held

that, at a minimum, monetary relief is not "incidental," and a class may not be certified

under Rule 23(b)(2) when monetary relief claims are subject to individual defenses:

> In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (C.A.5 1998), the
> Fifth Circuit held that a (b)(2) class would permit the certification of
> monetary relief that is "incidental to requested injunctive or declaratory
> relief" .... ... We need not decide in this case whether there are any forms of
> "incidental" monetary relief that are consistent with the interpretation
> of Rule 23(b)(2) we have announced and that comply with the Due Process
> Clause. Respondents do not argue that they can satisfy this standard, and in
> any event they cannot.
>
>                 * * *
>
> ... [A] class cannot be certified on the premise that [defendant] will not be
> entitled to litigate its statutory defenses to individual claims. And because
> the necessity of that litigation will prevent backpay from being "incidental"
> to the classwide injunction, respondents' class could not be certified even

assuming, arguendo, that "incidental" monetary relief can be awarded to a 23(b)(2) class.

*Id.* at *15.

The class claims that Acosta asserts in this case fail these newly explained tests for certification under Rule 23(b)(2). Acosta seeks monetary relief for class members; namely, statutory damages of $500 per violation or $1,500 per violation if Defendant is found to have acted knowingly or willfully.

That monetary relief is "individualized," not "incidental," as the Supreme Court used those terms in *Dukes* because both the right to the monetary relief and the amount of statutory damages turn on issues that can be proven only by individual evidence. The right to monetary relief turns on each class member's prior express consent, or its absence. Similarly, the amount to be awarded ($500 or $1,500 per violation) turns on whether Defendant acted knowingly or willfully in auto-dialing the class member's cell phone.

For the reasons already discussed above, these issues may be proved or disproved only by evidence particular and individual to each separate class member. Like Wal-Mart's individual defense to a backpay award, these individual issues, whether raised as elements of plaintiffs' claim or as affirmative defenses, make the requested monetary relief "individualized" in nature and not "incidental." Accordingly, under *Dukes*' reading of Rule 23, these issues bar certification of Acosta's putative class under Rule 23(b)(2).

**D) PLAINTIFF HAS BEEN FULLY COMPENSATED THROUGH SETTLEMENT, AND THUS IS NOT AN ADEQUATE CLASS REPRESENTATIVE.**

As discussed with the Court during an in-chambers status conference on November 13, 2019, Plaintiff entered into a settlement agreement with another defendant, HIPnation Operations & Solutions, LLC, resolving his claims against that defendant for the same

alleged violations of the TCPA that he now asserts as a class action against AA Group. Plaintiff is not an adequate class representative given that he has already been compensated for any damages that he may have suffered as a result of the Defendant's conduct that allegedly violated the TCPA. See *Gordon v. Pete's Auto Serv. of Denbigh, Inc*., 637 F.3d 454, 460 (4th Cir. 2011); See also *Black v. Pan Am. Labs*., LLC, 646 F.3d 254, 261 (5th Cir. 2011) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual."); See *Uthe Tech. Corp. v. Aetrium, Inc*., 808 F.3d 755, 756 (9th Cir. 2015) ("To the extent Defendant is concerned that Plaintiff may receive a double recovery for the same injuries, such concern may be redressed by offsetting any recovery obtained in this action if the prior award compensated Plaintiff for any part of the pre-existing TCPA violations.")  Thus, Acosta is not an adequate class representative.

## V. CONCLUSION

For the forgoing reasons, the Court should deny Plaintiff's motion for class certification.

Respectfully Submitted:

*/s/ Preston L. Hayes*

_____

PRESTON L. HAYES (#29898)
RYAN P. MONSOUR (#33286)
*Chehardy, Sherman, Williams, Murray,*
*Recile, Stakelum & Hayes, L.L.P.*
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 613-4528
*Counsel for accessAmerica Group, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2020, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing

to all counsel.  I further certify that I have sent the foregoing by U.S. Mail, postage pre-

paid, to parties and/or their counsel who would not receive notice through the CM/ECF

system.

*/s/ Preston L. Hayes*

_____

PRESTON L. HAYES